**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James E. FLEMING, Jr., et al.,**
**Defendants-Appellants.**

**Nos. 74–1112–74–1115.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 4, 1974.

Decided Oct. 23, 1974.

Edward L. Welch, Edwardsville, Ill., Patrick M. Flynn, Belleville, Ill., for defendants-appellants.

Henry A. Schwarz, U. S. Atty., and Joel V. Merkel, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS, STEVENS and TONE, Circuit Judges.

STEVENS, Circuit Judge.

James Earl Fleming, Jr., Kenneth J. Bevineau, Henry L. Fleming and Ronald Lee Williams were indicted on five substantive counts of bank robbery, under 18 U.S.C. § 2113 and § 2, and one conspiracy count, under 18 U.S.C. § 371. The indictments stemmed from the armed robbery of the First National Bank of East St. Louis, Illinois, on February 13, 1973.

After two days' testimony, during which several government witnesses present during the robbery identified him as one of the robbers, Ronald Lee Williams entered a plea of guilty on all six counts. The jury subsequently returned guilty verdicts against the remaining defendants on the five substantive counts.[1]

Defendants James Fleming, Jr., Kenneth Bevineau, and Henry Fleming appeal from the convictions and the sentences imposed by Judge Foreman on five grounds: 1) the evidence was insufficient to support the convictions; 2) the defendants were prejudiced when the government put co-defendant Williams on the stand, after he had entered a guilty plea, knowing that Williams would refuse to testify and would assert his Fifth Amendment privilege against self-incrimination; 3) the trial judge erred in denying these defendants' motions for severance from the trial of co-defendant Williams; 4) the trial judge erred in admitting the testimony of Sidney Fleming and Bonita Thomas about a pistol allegedly used in the robbery and in other evidentiary rulings; and 5) Judge Foreman's sentencing of the defendants to serve consecutive sentences on multiple counts based on 18 U.S.C. § 2113 arising from a single bank robbery was improper. Defendant Ronald Williams also appeals on this last basis.

We find appellants' first four contentions to be without merit. We do, however, agree that Judge Foreman erred in

---

1. At the close of the government's case, the court directed a verdict of acquittal on the conspiracy count, Count VI, as to the remaining three defendants.

prescribing multiple sentences for what was in fact a single bank robbery. Thus, we adjust the sentences of all four of the defendants.

## I.

In challenging the sufficiency of the evidence, defendants Bevineau, James Fleming, Jr., and Henry Fleming correctly note that the government's case was to a large extent based on the testimony of Otis Phillips. Phillips was incarcerated in the St. Clair County Jail on a draft evasion charge during the summer months of 1973. He testified that he had spoken with each of the three defendants during this period of time and that each had confessed to having participated in the February 13 bank robbery. The confessions each linked the declarant with other of the defendants and described parts of the robbery in detail. Defendants challenge the admission of Phillips' testimony on several grounds.

█ Appellants recognize that normally the credibility of a witness is for the trier of fact, in this case the jury, to determine. They contend, however, that Phillips' testimony was "false as a matter of law" because of the discrepancies in the dates on which Phillips claimed to speak to the defendants and the actual dates on which the defendants were in the county jail.[2] These discrepancies go not to the admissibility of the evidence, however, but only to its weight. The discrepancies were noted and commented upon by defendants' counsel during closing argument. We think the jury properly considered them in determining Phillips' credibility.

█ Secondly, the defendants note that Phillips was still awaiting sentencing on the draft evasion charge when he testified in this case. They suggest that

Phillips had, therefore, a motive for falsely testifying to aid the government's case. Suffice it to say that such a consideration once again goes only to the weight of Phillips' testimony and not to its admissibility. Defense counsel brought Phillips' status to the attention of the jury, and it was considered by them in determining his credibility.

Finally, the defendants object to the admission of Phillips' testimony because they contend the confessions were not adequately corroborated by other evidence. The Supreme Court has indicated that confessions must be corroborated before they may be admitted. Opper v. United States, 348 U.S. 84, 91, 75 S.Ct. 158, 99 L.Ed. 101, see also United States v. Pichany, 490 F.2d 1073, 1076–1077 (7th Cir. 1973). As the Court stated in *Opper*, "It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. . . . It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." 348 U.S. at 93, 75 S.Ct. at 164.

█ The Supreme Court explained the character of the corroboration that is required in Wong Sun v. United States, 371 U.S. 471, 489–490 n. 15, 83 S.Ct. 407, 419, 9 L.Ed.2d 441,

Where the crime involves physical damage to person or property, the prosecution must generally show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable. A notable example is the principle that an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim. (citation omitted) *There*

---

2. Phillips testified that James Fleming confessed to him in late September, 1973. James Fleming was not, in fact, brought to the jail until October 23, 1973. Phillips said he talked with Bevineau in August, 1973. Bevineau was not in the jail between July 10 and September 13, 1973. Finally, Phillips

testified that Henry Fleming admitted his participation in the robbery while Phillips was awaiting trial on his draft evasion charge. But Phillips was tried before June 27, 1973, and Henry Fleming did not arrive at the jail until September 13, 1973.

*need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it.* (emphasis added).

*See also* United States v. Charpentier, 438 F.2d 721, 724–725 (10th Cir. 1971). Thus, the government's evidence of the *corpus delicti* was adequate to corroborate Bevineau's confession to Phillips that he participated as a lookout, and the Flemings' confessions as well.[3]

Having concluded that Phillips' testimony concerning the three confessions was properly admitted, it is clear that, viewing the evidence in the light most favorable to the government, it was sufficient to convict these three defendants of the bank robbery. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. White, 470 F.2d 170, 172 (7th Cir. 1972).

## II.

Defendants James and Henry Fleming and Bevineau contend that their rights to a fair trial and of confrontation were denied when the government put co-defendant Ronald Williams on the stand after he had pleaded guilty. Williams refused to answer any questions when called.

Defendants rely principally on Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. In *Douglas*, a co-defendant's confession implicating Douglas was read in open court under the guise of examining the co-defendant, who refused to answer. There the confession "formed a crucial link in the proof both of [Douglas'] act and of the requisite intent to murder." 380 U.S. at 419, 85 S.Ct. at 1077. Because the co-defendant refused to answer questions, Douglas was unable to confront him and

cross-examine him as to the veracity of the confession as it implicated Douglas. The Supreme Court held that the use of the confession in this manner by the prosecution effectively denied Douglas his Sixth Amendment rights.

Here, no confession of Williams was ever read into evidence. He was asked only two questions: "Will you state your name, sir?" and "Mr. Williams, did you this morning plead guilty to each of the six counts in the indictment in this case that we have been trying for the last two days, sir?" Williams refused to answer either. Neither of the questions in any way incriminated the remaining defendants; there was already ample evidence in the record of Williams' guilt. No confrontation rights were lost.

Indeed, there was less prejudice to the defendants' Sixth Amendment rights here than that found acceptable in Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684. There, the prosecutor had summarized the confession of a co-defendant in his opening statement. When, later, the co-defendant refused to answer any questions, a Sixth Amendment contention similar to that here was raised. Nevertheless, the Court refused to find constitutional error, noting that the confederate was on the stand for only a short period of time and that only a paraphrase of the statement was placed before the jury. This, coupled with the trial judge's instruction to the jury that the statements of counsel were not evidence, led the Court to conclude that there was no deprivation of the right of confrontation. We conclude that a similar result is warranted here.

Appellants argue alternatively that their rights to a fair trial were de-

---

3. There is additional significant corroborating evidence as to the two Flemings. It is not disputed that there is ample evidence that two men entered the bank and robbed two tellers on February 13, 1973. One was positively identified as Ronald Williams by several witnesses. One witness stated that the other "looked like" James Fleming, Jr. Although not a positive-enough identification for purposes of demonstrating Fleming's guilt, the testimony helps to corroborate Phillips' story. Other witnesses stated that, when the two men left the bank, the getaway vehicle zoomed away after the second robber had barely entered, thus creating the strong inference that a driver had been waiting in the car. Henry Fleming was the driver according to Phillips.

nied when the trial judge refused to instruct the jury that Williams' refusal to testify should not be charged to the defendants. After reviewing the record, we are convinced that Judge Foreman was correct when he concluded that no such instruction was necessary. There is nothing in the record that in any way suggests that Williams' truculence was attributable to the defendants. As Judge Foreman was present and able to observe the effects of Williams' outburst on the jury, we feel he was in the best position to determine the need for such an instruction.

■ Finally, we reject defendants' suggestion that the government's purpose in putting Williams on the stand was solely to bring before the jury the fact that he pleaded guilty in order to enhance the credibility of Otis Phillips' testimony. As Williams had pleaded guilty to all six counts of the indictment, he no longer could assert his Fifth Amendment privilege to avoid testifying. United States v. Skolek, 474 F.2d 582, 585 (10th Cir. 1973); United States v. Hoffman, 385 F.2d 501, 505 (7th Cir. 1967), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288. The government had obtained immunity from the state authorities as well to protect Williams in any subsequent state prosecution based on this robbery. Thus, the government believed it could compel Williams to answer questions about this transaction. While the court had been informed that Williams did not wish to testify, and that Williams' attorney was concerned lest Williams incriminate himself in connection with potential Missouri parole violation and federal flight to avoid prosecution charges, there was no indication that Williams would not answer narrowly-drawn questions relating solely to the bank robbery when directed to do so by the court. We do not believe the evidence warrants the conclusion that the government acted in bad faith in calling him as a witness. *Cf.* Frazier v. Cupp, 394 U.S. 731, 736–737, 89 S.Ct. 1420, 22 L.Ed.2d 684.

### III.

Judge Foreman denied the motions of Bevineau and James and Henry Fleming for severance of their trial from that of Ronald Williams, who had confessed to participating in the bank robbery. Relying on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, they contend this was reversible error. We disagree.

In *Bruton,* a confession given by co-defendant Evans implicating Bruton was introduced into evidence. As Evans did not take the stand, Bruton was unable to confront him with respect to the damaging portions of the confession. The Supreme Court concluded that Bruton had been denied his constitutional right of confrontation and that an instruction to the jury to consider Evans' confession only on the issue of his guilt or innocence was inadequate to protect Bruton.

■ *Bruton* requires that, if the prosecution intends to utilize the confession of a defendant against him, appropriate steps must be taken to insure that the Sixth Amendment rights of co-defendants are not impaired. One obvious way to prevent this would be to order separate trials, as *Bruton* suggests. We have indicated, in United States v. Gregg, 414 F.2d 943, 948 (7th Cir. 1969), cert. denied, 399 U.S. 934, 90 S.Ct. 2251, 26 L.Ed.2d 806, and the Court suggested in *Bruton,* 391 U.S. at 134 n. 10, 88 S.Ct. 1620, that another means is available: the deletion of any reference to co-defendants in the confession. If the witness testifying as to the confession does not refer to co-defendants, co-defendant Sixth Amendment rights are not denied.

■ Thus, the mere fact that the prosecution had obtained a confession from Willams did not require the granting of the other defendants' motions to sever. At that point, it was not known if the government even planned to introduce the confession. And, if the plans were to introduce it, these defendants' Sixth Amendment rights could be protected by appropriate deletions.

## IV.

The defendants next argue that it was error to allow the testimony of Sidney Fleming and Bonita Thomas with respect to a pistol that was allegedly used in the robbery to remain in the record. They contend that these witnesses were unable adequately to connect the gun in question to the robbery and that the defendants were prejudiced by the testimony.

Sidney Fleming, grandfather of the Flemings and grandfather-in-law of Bevineau, testified that he had owned a pistol for over two years, but that it had been missing at one time. His recollection was refreshed by an earlier statement he had made that the gun had left his possession in February or March, 1973.[4] He then testified that Henry Lee Fleming and "two or three more" later returned the gun to him. On cross-examination, however, he admitted not knowing "what date or what month it was that the gun was missing from my home."

Bonita Thomas, granddaughter-in-law of Sidney Fleming, testified that Sidney Fleming had been looking for James Fleming to return the gun and that she saw James Fleming and others she could not identify come to her grandfather's house to return the gun. She was unable, however, to pinpoint the date of this occurrence.

Otis Phillips connected up much of this testimony about the revolver when he stated that James Fleming admitted that he had received his share of the proceeds of the robbery at his grandfather's house and that he gave the weapon to his grandfather at that time. We think that the government sufficiently linked the revolver in question to the bank robbery through these witnesses to permit the testimony to remain in the record. Any ambiguity as to the dates of these occurrences properly went to the weight of the testimony and not to its admissibility. Counsel for the defendants dwelled at length on the weakness of this evidence in closing argument. We feel it was proper to allow the evidence to be considered by the jury.

We have examined the defendants' other evidentiary contentions and do not find them meritorious.

## V.

All four of the defendants challenge the propriety of the sentences imposed by Judge Foreman. As we conclude that the judge improperly interpreted the Federal Bank Robbery Act, we need not reach the defendants' contentions that the sentences violated the Fifth Amendment guarantee against double jeopardy. The relevant provisions of 18 U.S.C. § 2113, § 2 and § 371 are set forth in the margin.[5]

4. Contrary to defendants' contentions, we believe the government's use of the prior statement was more in the nature of refreshing the witness' recollection than impeaching him.

5. § 2113. Bank robbery and incidental crimes.
   (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;
       \*        \*        \*        \*        \*
   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both;
       \*        \*        \*        \*        \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device,, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.
   § 2. Principals.

The indictment charged each of the four defendants on five substantive bank robbery counts. Count I charged the defendants with having taken $2,625.00 by force, violence and intimidation from the person and presence of Marilyn Higgins, a teller at the bank, in violation of 18 U.S.C. § 2113(a) and § 2. Count II charged the defendants with having taken $6,953.16 by force, violence and intimidation from the person and presence of Ruth King, a teller at the bank, in violation of 18 U.S.C. § 2113(a) and § 2. Count III charged the defendants with having taken the total of $9,578.16 from the bank itself, in violation of § 2113(b) and § 2. Count IV charged the defendants with assaulting and putting in jeopardy by use of a dangerous weapon the life of Marilyn Higgins in connection with the taking of the $2,625.00 from her person, in violation of 18 U.S.C. § 2113(d) and § 2. Count V charged the defendants with assaulting and putting in jeopardy by use of a dangerous weapon the life of Ruth King in connection with the taking of $6,953.-16 from her person in violation of 18 U.S.C. § 2113(d) and § 2. Count VI charged the defendants with conspiracy to commit the aforementioned offenses, in violation of 18 U.S.C. § 371.

Judge Foreman sentenced Ronald Williams, who had pleaded guilty to all six counts, to 20 years each on Counts I and IV and 10 years on Count III, with sentences to run concurrently with one another. He then sentenced Williams to 20 years each on Counts II and V and five years on Count VI, with sentences to run concurrently with one another, but consecutively to the concurrent terms on Counts I, III, and IV. Thus,

Williams was sentenced to serve a total of 40 years.

Like Williams, James and Henry Fleming were sentenced to 20-year terms on Counts I and IV and 10 years on Count III with sentences to run concurrently. They also received 20-year sentences on Counts II and V, to run concurrently, but consecutively to the sentences imposed under Counts I, III, and IV, for a total sentence of 40 years. Bevineau received the same sentences, except that he was sentenced to only 10 years on Counts II and V, for a total of 30 years.

■■■ Defendants contend first that Judge Foreman erred in sentencing them separately under subsections (a), (b), and (d) for what was in fact the robbery of a single teller. They argue that subsections (a) and (b) merge into the aggravated robbery punishable under subsection (d), and that even the imposition of concurrent sentences was erroneous. Then, they contend that the placing of the lives of two tellers in jeopardy during a single bank robbery does not constitute the commission of two separate offenses under subsection (d). Thus, they conclude that their maximum sentences should have been those imposed by Judge Foreman for one subsection (d) violation: 20 years. For the following reasons, we agree.

In Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, the Supreme Court concluded that Congress, in enacting the Federal Bank Robbery Act, did not intend to provide for pyramiding of penalties. 352 U.S. at 327–328, 77 S.Ct. 403. Thus, the Court held that the offense of entering a bank for purposes of committing a felony merged with the

---

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

§ 371. Conspiracy to commit offense or to defraud United States.

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

offense of bank robbery. Subsequent court decisions have indicated that the subsections of § 2113 were intended to set forth a progression of aggravated offenses: (b) relates to simple robbery from the institution; (a) relates to robbery by force, violence and intimidation from the person or presence of a bank employee; (d) relates to the commission of an offense defined in either (a) or (b) with the addition of putting in jeopardy the life of any person by use of a dangerous weapon or device. The three subsections provide for increasing maximum punishments as well. Thus, each of the circuits has concluded that Congress intended subsection (b) to merge into subsection (a) and subsection (a) into subsection (d) when the elements of a subsection (d) violation are present. In such a case there is only one offense, and there may be only one sentence. United States v. Trumblay, 286 F.2d 918, 920 (7th Cir. 1961); United States v. Faleafine, 492 F.2d 18, 24 & n. 5 (9th Cir. 1974). Since Counts I and III merged into Count IV, and Count II merged into Count V, it was improper for Judge Foreman to have sentenced the defendants on Counts I, II, and III.

■ The fact that Judge Foreman ordered the sentences on these counts to run concurrently with the 20-year sentences issued under Counts IV and V does not correct the error. These defendants may still be prejudiced by the imposition of these illegal sentences, and they must be vacated. United States v. Shelton, 465 F.2d 361, 363 (4th Cir. 1972); Burger v. United States, 454 F. 2d 723, 724 (5th Cir. 1972); cf. United States v. Canty, 152 U.S.App.D.C. 103, 469 F.2d 114, 126 & n. 14 (1972).

■ Can the consecutive sentences imposed under Counts IV and V stand? In effect, Judge Foreman sentenced each defendant for placing the life of each teller in jeopardy. Presumably, during the course of a single bank robbery,

money could be taken at gunpoint from as many as a dozen tellers. Each robber could, presumably, be sentenced to serve up to 12 consecutive 25-year sentences under subsection (d).[6] We do not think this is what Congress intended in passing the Federal Bank Robbery Act.

The Supreme Court has indicated that where Congress has not clearly spoken, "doubt will be resolved against turning a single transaction into multiple offenses." Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905. This admonition guided the Court in United States v. Canty, 152 U.S.App.D. C. 103, 469 F.2d 114 (1972). Canty was charged with four counts of bank robbery under subsection (a); he and his accomplices had taken funds from four different tellers. The trial judge imposed four concurrent sentences on the bank robbery counts. On appeal, the Court of Appeals concluded that the trial judge had erred in treating the robbery from each teller as a separate offense.

> [W]e cannot agree with the Government's position that the robbery of each teller constitutes a separate "taking" within the meaning of the statute. While it may be true that under general theft and robbery statutes, a defendant may be punished under separate counts for taking money from different people in the same transaction, the statute here is not for theft or robbery against the person generally. The crime is *bank* robbery, and the statute is entitled "Bank Robbery and Incidental Crimes." There is no doubt here that only one transaction took place and that only one bank was robbed. 469 F.2d at 126 (footnotes omitted; emphasis in original).

The Court vacated all but one of the subsection (a) sentences.

A similar result was reached on facts virtually identical to those in this case in an older Ninth Circuit decision, Di-

---

6. Indeed, the robber need not personally place the life of every teller in jeopardy. Under 18 U.S.C. § 2, he would presumably be liable for the acts of his confederates in obtaining money at gunpoint, as was the case here.

menza v. Johnston, 130 F.2d 465 (9th Cir. 1942). The defendant had been charged on one count of violating 12 U.S.C.A. § 588b(a) (the predecessor of § 2113(a)), on three counts of violating 12 U.S.C.A. § 588b(b) (the predecessor of § 2113(d)), and on a conspiracy count. He had placed the lives of three persons in jeopardy by use of a deadly weapon. The trial court had sentenced the defendant to consecutive five-year terms on each count. On appeal, the Ninth Circuit reversed, concluding that the sentence imposed on one count of placing a life in jeopardy by use of a deadly weapon "covered all counts of the indictment except the two-year sentence on [the conspiracy count]." 130 F.2d at 467. As the defendant had served seven years, the court ordered that he be released. In denying a petition for rehearing, the court reaffirmed its prior holding and concluded,

> If the lives of a dozen persons were imperiled the fact that the draftsman chose to name each individual in a separate count rather than to include them all in one count . . . did not constitute each count a separate and distinct bank robbery, although, if the offense charged had been that of an assault upon the individual, it would do so. 131 F.2d 47, 48 (9th Cir. 1942).

The only significant authority contrary to our conclusion that only one subsection (d) offense is committed when the lives of more than one teller are placed in jeopardy during a single bank robbery is the later Ninth Circuit decision in Clermont v. United States, 432 F.2d 1215 (9th Cir. 1970), cert. denied, 402 U.S. 997, 91 S.Ct. 2182, 29 L.Ed.2d 163. There, the defendant had placed the lives of two tellers in jeopardy and had received two concurrent 25-year sentences under subsection (d). On appeal, these sentences were affirmed, the court concluding that, as the

assaults were committed on two different persons, the offenses did not merge. 432 F.2d at 1217.

The Ninth Circuit has recently indicated its disapproval of the result reached in *Clermont*. In United States v. Faleafine, 492 F.2d 18, 24 (9th Cir. 1974), the court noted that *Clermont* did not cite *Dimenza,* and appeared to be an "aberration."

The only other support for permitting multiple subsection (d) offenses and sentences is McDonald v. Hudspeth, 129 F.2d 196 (10th Cir. 1942), cert. denied, 317 U.S. 665, 63 S.Ct. 75, 87 L.Ed. 535. With little discussion, the court concluded that placing the life of a different person in jeopardy created a separate offense under 12 U.S.C.A. § 588b(b) (§ 2113(d)'s predecessor). The decision in *McDonald* was cited to the Ninth Circuit in the petition to rehear Dimenza v. Johnston. In declining to follow *McDonald,* the court noted that the aforementioned statements in *McDonald* were dicta because the question was not within the issues properly raised by the habeas corpus petitioner 131 F.2d at 48.

We feel that the result reached in *Dimenza,* for the reasons set forth in *Canty,* is the appropriate one. The crime is bank robbery, not personal assault. Subsection (d) is merely an aggravated form of bank robbery. Congress' concern was penalizing the robbery of the institution, perpetrated by whatever means, and not penalizing the robbery of each individual teller.

We are not suggesting that these defendants might not be liable for assaulting each teller separately under state law. *Cf.* Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684.[7] We only hold that placing the lives of more than one person in jeopardy during a single bank robbery constitutes only one offense under § 2113(d).

Our conclusions necessitate the following revisions in the sentences imposed

---

7. The government recognized that possibility here, for it obtained immunity for Williams from the Illinois authorities prior to calling him as a witness against the other three defendants.

by Judge Foreman. We vacate the sentences imposed on Counts I, II, III and IV for both James and Henry Fleming; only the 20-year sentence under Count V remains. Our problem is somewhat more complex for defendant Bevineau. Clearly the sentences for Counts I, II, and III must be vacated. Bevineau, the lookout during the robbery, received a 20-year sentence on Count IV (assault on teller Higgins) but only a 10-year sentence on Count V (assault on teller King). Both of these sentences, imposed under subsection (d), cannot stand. We cannot determine whether Judge Foreman, faced with the choice of retaining the 20-year sentence or that for 10 years, would desire Bevineau to serve the same term as, or a shorter term than, the other defendants. Thus, we remand Bevineau's case to Judge Foreman to enable him to choose whether to retain the sentence under Count IV or Count V.

The sentences imposed on Counts I, II, and III for defendant Williams must similarly be vacated. Only one of the 20-year sentences imposed on Counts IV and V can remain. Williams, in addition, was sentenced to a five-year term on Count II, the conspiracy count.[8] At the close of the government's case against the remaining three defendants, after Williams' guilty plea on all six counts, the district judge granted defense motions for acquittal on Count VI. Thus, only Williams stands convicted of conspiracy.

For two reasons, we believe Williams' sentence on Count VI must be vacated. First, since the five-year sentence on the conspiracy count was to run concurrently with the sentence on Counts II and V, and since the effect of all of the sentences was to impose an identical total sentence on each of the four co-defendants, we cannot believe that the trial judge intended that the one defendant who entered a guilty plea should serve a longer sentence than any of his three co-defendants. Second, it is clear that a conspiracy requires at least two participants, and it has repeatedly been said that the acquittal of all but one of the alleged conspirators should operate as an acquittal of that defendant as well. See e. g. United States v. Goodwin, 492 F.2d 1141, 1144 (5th Cir. 1974); United States v. Gardner, 475 F.2d 1273, 1277 (9th Cir. 1973), cert. denied, 414 U.S. 835, 94 S.Ct. 178, 38 L. Ed.2d 70; Dodson v. United States, 215 F.2d 196, 200 (6th Cir. 1954); United States v. Fox, 130 F.2d 56, 57 (3rd Cir. 1942), cert. denied, 317 U.S. 666, 63 S. Ct. 74, 87 L.Ed. 535. Precisely how that rule should apply to a case in which the record demonstrates that the one defendant adjudged guilty of conspiracy did in fact conspire with the defendants who have been adjudged not guilty is not at all clear in view of the well-settled rule that verdicts in criminal cases need not be consistent. See Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356. Nevertheless, in view of our appraisal of the intent of the trial judge, we believe the rule should be applied in this case and, therefore, that Williams' sentence on Count VI must be vacated.[9]

Accordingly, we remand these cases for proceedings consistent with this opinion.

8. It is clear that the inchoate offense of conspiracy does not merge with the choate bank robbery offense. United States v. Welty, 426 F.2d 615, 619 n. 15 (3rd Cir. 1970); see Dimenza v. Johnston, 130 F.2d 465, 467 (9th Cir. 1942).

9. We recognize, of course, that the conviction of a single conspirator may be upheld if the indictment alleges that the conspiracy involved unknown persons. The indictment in this case did so allege. However, the government offered no evidence to show that anyone except the four defendants participated in the conspiracy to rob the bank. Didenti v. United States, 44 F.2d 537, 538 (9th Cir. 1930) is therefore distinguishable.