**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Henry C. BALTRUNAS, Defendant–Appellant.**

**No. 91–1741.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 29, 1992.

Decided March 13, 1992.

Mark D. Pollack, Asst. U.S. Atty., Ramune R. Kelecius (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Eugene Steingold, Chicago, Ill. (argued), for defendant-appellant.

Before FLAUM and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

A jury convicted Henry Baltrunas of one count of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of using and carrying a firearm during and in relation to the commission of the robbery, in violation of 18 U.S.C. § 924(c). Baltrunas brings this appeal challenging the sufficiency of the evidence to support his convictions. Pursuant to the Sentencing Guidelines, the district court sentenced Baltrunas to 300 months imprisonment, as a career offender, on the robbery conviction to run consecutively to a five year term of imprisonment on the firearms conviction. Baltrunas does not appeal his sentence.

On January 9, 1990, at approximately noon, a man entered the teller area for the drive-up and walk-up windows at the Harris Bank Winnetka in Winnetka, Illinois. The intruder sprayed paint on the surveillance camera, and to open the door he used channel locks, which he left at the bank. The man wore blue jeans, an overcoat, dark gloves, a ski hat and a scarf which was wrapped around his face. The tellers differ on some details of his dress. The robber pulled a semi-automatic gun from the coat and ordered two bank tellers, Baudelio Jaunez and Sara Kelly to lie face down on the floor. The robber took approximately $31,500 in U.S. currency from the tellers' drawers. Included in this money was $400, forty ten dollar bills, which was marked as "bait" money. After the intruder left, the

tellers activated the bank alarms and notified other employees of the robbery. Neither teller could identify the robber.

Shortly after the robbery, Kimberly Cappelen, who worked one block away from the bank, left her office to go to lunch. She testified that she heard screeching and saw a car stop across the street. The driver jumped out of the car without turning off the car's engine. He carried a plastic bag, and entered the passenger's side of a waiting metallic, rust colored car. Cappelen described the man as a white male with dark brown hair who appeared to be in his late 20's or 30's and approximately 5′9″ to 5′11″ in height. The man was wearing white pants and a flannel shirt. She could not identify the man in a photographic array or at trial.

On January 9, 1990, Nancy Schemitsch was working at the grocery store she owned in Franklin Park, Illinois. At approximately 10:00 a.m., she saw a dark brown car, carrying two people, pull into the parking lot. The passenger entered the store. He had long blond hair and wore blue jeans, a baseball cap and a dark jacket with a zipper. Schemitsch went to the office in the back of the store. The man came to her door and asked if he could use the store's restroom. Schemitsch's daughter, Leslie, who was also working, had hung her jacket in the bathroom. Her key ring, including a set of keys to her mother's car, were in that jacket. Several minutes later, Leslie called to her mother, reporting that a man, who matched the description of the man who used the restroom, was walking from car to car in the front parking strip. By the time Schemitsch came to look, the man was gone. Schemitsch then checked the back lot and found that her car was missing. She immediately called the police. Schemitsch could not identify the man who came into the store. During the investigation of this crime, authorities learned that defendant Baltrunas' mother, Bertha Baltrunas, lived only a few blocks from Schemitsch's grocery store and that the defendant had been staying some of the time at his mother's home.

Schemitsch's car was the car that Cappelen observed and that police found abandoned one block from the robbery. Leslie's keys were still in the ignition when police arrived. Police officers found a red and white bag from the Snow Bird Ski Shop in the front passenger area of the car. Schemitsch testified that she had never seen the bag, nor had she been to the ski shop.

Law enforcement officials spoke with Alicia Frake, who was working at the Snow Bird Ski Shop on January 9, 1990. She testified that at approximately 11:00 a.m. a man came to the shop and asked to buy a scarf. She described the man of medium height as 25 to 30 years old, with dark hair. The man was wearing a dark ski jacket, blue jeans and a flannel shirt. Frake testified that she showed the scarf display to the man who took the top scarf from the pile. Frake stated that she remembered the scarf because it was unique. The shop carried only two such scarves which were part of a select and expensive line of ski apparel. The scarf was slate blue with two small puppy dogs embroidered on one end. She gave investigators the second scarf, which had not been sold. On February 9, 1990, law enforcement agents returned to the ski shop. From a photographic array, Frake positively identified defendant Baltrunas as the man who bought the scarf, and she also identified the defendant at trial. In addition, at trial, Jaunez, the bank teller, identified the scarf as identical to the one worn by the bank robber.

Trial testimony reflects that the investigation then focussed on the defendant. The investigation revealed that Henry Baltrunas lived intermittently with his mother, and stayed at various hotels in the Chicago area with his girlfriend, Vicky Simandl, following the robbery. The couple always paid for these rooms in cash. Investigators also talked with the defendant's brother, John Baltrunas. John Baltrunas consented to a search of his apartment in Cicero, Illinois. There police found a slate blue scarf identical to the one they had been given by Frake. John testified that the clothing belonged to the defendant. John Baltrunas further testified that the

defendant had given him $5,000 which John used to take his wife and children on vacation. Finally, John testified that the defendant was unemployed between January and February, 1990, but did receive income from disability checks.

On February 20, 1990, Sergeant Detective Patricia McConnell of the Winnetka Police Department and Special Agent Chris Cole of the FBI arrested the defendant as he was returning to the hotel where he was staying. The defendant was apprised of his constitutional rights, and the officers took Baltrunas to the FBI's Chicago office. Baltrunas was taken to an interview room, where he signed a waiver of rights form. The defendant told Agent Cole and Special Agent William Keefe, who sat through the entire interview, that he had used heroin earlier that morning, but at the time of the interview was not experiencing any adverse effects from the drug. Agent Cole testified that Baltrunas seemed to understand what was said to him, and Agent Cole had no difficulty understanding the defendant. The defendant displayed no physical signs of impairment, such as loss of balance or the inability to walk. In Agent Cole's opinion, Baltrunas was sober when he signed the waiver of rights form. Agent Cole interviewed the defendant, and Baltrunas gave a detailed confession of the robbery. Agent Keefe prepared a statement based on the interview, but Baltrunas refused to sign the statement. Additional details were provided by the defendant and documented in a memorandum. Baltrunas told the police that he gave some of the stolen money to his brother and used the rest for living expenses and to support his $100 per day heroin addiction.

Following Baltrunas' arrest, police searched his hotel room and found a pair of channel locks similar to those left in the bank by the robber. On March 13, 1990, pursuant to a search warrant, Agent Cole searched a safety deposit box belonging to the defendant at the American National Bank in Melrose Park, Illinois. The box contained $15,900 in U.S. currency, none of which was the marked bait money. Bank records indicated that the defendant accessed the safety deposit box on January 1,

8, 12, 19, 26, and 29, and February 7 and 9, 1990.

Baltrunas appeals his conviction claiming that there is insufficient evidence to support his conviction for bank robbery. The pertinent statute, 18 U.S.C. § 2113, provides in part:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

.   .   .   .   .

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

The crux of his argument is that the evidence against him is highly circumstantial and filled with inconsistencies. Baltrunas also challenges his confession, claiming that he was incompetent to waive his rights due to his heroin addiction. Thus, he contends that his confession was tainted. In his brief, the defendant summarizes his position:

[W]here the evidence is largely circumstantial and where direct evidence consists of an admission or confession by defendant, a principle of corroboration may become relevant.... "It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement ..." [sic] *United States v. Fleming*, 504 F.2d 1045, 1048 (7th Cir.1974).

It appears, although it is not altogether clear, that the defendant is arguing that

without the confession, the evidence is insufficient to support the conviction, and that the confession is inadmissible because it is not supported by substantial independent and corroborating evidence and because Baltrunas was under the influence of heroin when he made the statements.

When a criminal defendant challenges the sufficiency of the government's evidence,

> we ask whether '*any* rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt.' *Jackson v. Virginia*, 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560] (1979) (emphasis in original). Furthermore we view the evidence in the light most favorable to the government in making this determination.

*United States v. Ashford*, 924 F.2d 1416, 1424 (7th Cir.1991) (quoting *United States v. Elizondo*, 920 F.2d 1308, 1315 (7th Cir. 1990)). Our review accords deference "to reasonable inferences drawn by the jury and the weight it gave to the evidence." *United States v. Caudill*, 915 F.2d 294, 297 (7th Cir.1990). In viewing the evidence in the light most favorable to the government, we "accept circumstantial evidence as support, even sole support, for a conviction." *Id.*

■ In our opinion, the evidence is sufficient to support this conviction. Schemitsch's car was stolen and found one block away from the scene of the robbery. Cappelen saw a man exit the car, and she described a man similar to Baltrunas. That neither Schemitsch nor Cappelen could positively identify the man is not fatal to the government's case because Baltrunas left a "calling card" in the car, namely the bag from the Snow Bird Ski Shop. Frake positively identified Baltrunas as the man who purchased an exclusive and unusual scarf. The ski shop only carried two such scarves, the first she sold to Baltrunas, the second she gave to law enforcement officials. Bank teller Baudelio Jaunez testified that he recognized the scarf as the one used by the bank robber. The defendant's brother, John Baltrunas had possession of the scarf and told police

that it belonged to the defendant. Law enforcement officials found $15,900 in Baltrunas' safety deposit box, an unusual amount for an unemployed individual with a $100-a-day heroin habit who appears to be living off of disability checks. Finally, law enforcement personnel found a pair of channel locks similar to those used in the bank robbery in the hotel room where Baltrunas was staying. Viewing this evidence and the inferences drawn therefrom in the light most favorable to the government, the evidence is sufficient to sustain Baltrunas' robbery conviction. Thus, even in the absence of Baltrunas' admissions to the law enforcement agents, the government presented sufficient evidence to sustain the convictions.

■ Because, in our opinion, the evidence is sufficient to uphold the conviction even in the absence of Baltrunas' admissions of guilt to the FBI agents, we need not discuss at length Baltrunas' contentions concerning his statements. However, we do note the following. First, Baltrunas neither filed a motion to suppress this evidence, nor did he object to its admission at trial. Therefore, the government correctly contends that he has waived his challenge to the admission of this evidence on appeal. Thus, this court reviews the admission of this evidence for plain error. The plain error rule is "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Elizondo*, 920 F.2d at 1315 (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). This court defines plain error as an error "that resulted in 'an actual miscarriage of justice, which implies the conviction of one who but for the error would have been acquitted.'" *United States v. Gironda*, 758 F.2d 1201, 1216 (7th Cir.1985) (quoting *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984)). Further, for an appellate court to review for plain error, "defendant's argument for reversal must be based on 'newly-raised questions of law, untainted by factual ambiguity.'" *Id.* (quoting *United States v. McCabe*, 720 F.2d 951, 955 (7th Cir.1983)).

Baltrunas argues that his admission to the FBI agents should not have gone to the jury because they were not corroborated by independent evidence establishing the trustworthiness of the statements. Baltrunas also attempts to argue that his heroin addiction, including evidence that he had ingested heroin earlier on the day of his arrest, make the statements inadmissible.

Baltrunas baldly claims that there is a lack of substantial independent evidence to corroborate his admissions. He relies on *United States v. Fleming*, 504 F.2d 1045 (7th Cir.1974), to support this assertion. It appears that Baltrunas is claiming that the other evidence of his guilt (discussed above) is insufficient to corroborate his statements to the law enforcement officers. Baltrunas correctly cites *Fleming* for the proposition that "confessions must be corroborated before they may be admitted." *Id.* at 1048. However, Baltrunas miscomprehends the essential nature of corroboration. The court in *Fleming* cited the Supreme Court's decision in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), to explain "the character of the corroboration that is required":

> Where the crime involves physical damage to person or property, the. prosecution must. generally show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable. A notable example is the principle that an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim. (citation omitted) *There need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it.* (emphasis added)

*Fleming*, 504 F.2d at 1048–49 (quoting *Wong Sun*, 371 U.S. at 489–90 n. 15, 83 S.Ct. at 418–19 n. 15). Thus, all the "corroboration" that was needed in this case was evidence that a robbery did indeed occur at the bank on January 9, 1990, and, of course, ample evidence on this point exists.

Baltrunas makes an inadequately developed argument that his confession was tainted because his use of heroin made him constitutionally incapable of waiving his rights. In support of this proposition, the defendant cites *United States v. Kord*, 836 F.2d 368 (7th Cir.1988). In *Kord*, the defendant, Mangum, argued that his confession was tainted because he was a drug abuser. Agent Leuck, who interviewed Mangum testified that Mangum stated he had not used any narcotics in "a day or so." We assume that Baltrunas wants us to find, by implication, that his use of heroin on the day of his arrest distinguishes Baltrunas' situation from that in *Kord* and invalidates his admissions. In *Kord*, however, the court did not end its inquiry based on the testimony that Mangum had not ingested drugs on the day he was questioned. The court noted:

> Furthermore, Agent Leuck testified that the defendant did not appear to be under the influence of drugs.... Sergeant Bill Myers of the Woodford County Sheriff's Department observed the Mangum interview and the defendant had ample opportunity to call him as a witness to substantiate his claim. Defendant Mangum chose not to do so and we find his allegation unconvincing.

*Kord*, 836 F.2d at 375 n. 2.

As already noted, Agent Cole testified at trial that Baltrunas was orally informed of his *Miranda* rights and later signed a waiver of rights form. The agent further testified that Baltrunas told him that he had taken heroin earlier in the day, but did not appear to be impaired when he was interviewed. Agent Cole understood what the defendant was saying, and the defendant appeared to understand Agent Cole. The entire interview was witnessed by Agent Keefe. The defendant "had ample opportunity to call [Agent Keefe] as a witness to substantiate his claim. [He] chose not to do so and we find his allegation unconvincing." *Id.*

For the foregoing reasons, the defendant's conviction is

Affirmed.