**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eric CHRISMON, Andrew Poe, and
Baron Jackson, Defendants–
Appellants.**

**Nos. 90–1824, 90–1863 and 90–1915.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1992.

Decided June 29, 1992.

Joel Merkel, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, Ill., for U.S.

Robert A. Handelsman (argued), Chicago, Ill., for Chrismon.

David M. Fahrenkamp (argued), Edwardsville, Ill., for Poe.

Edward L. Adelman (argued), Dunham, Boman & Leskera, East St. Louis, Ill., for Jackson.

Before CUMMINGS, POSNER, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Defendants Eric Chrismon, Andrew Poe, and Baron Jackson were arrested following

a Drug Enforcement Administration (DEA) raid of a mobile home suspected to be a "drug house." They were each indicted on three counts: possession with intent to distribute marijuana; conspiracy to distribute and to possess with intent to distribute marijuana; and using and carrying a firearm during and in relation to a drug trafficking crime. A jury found Mr. Chrismon and Mr. Poe not guilty on count one, but guilty on counts two and three. The jury found Mr. Jackson guilty on all three counts. All three men appeal to this court to overturn their convictions. For the following reasons, we affirm.

I

BACKGROUND

A. *Facts*

On March 16, 1988, in Brooklyn, Illinois, DEA special agents, assisted by Illinois State Police officers and a special agent of the Bureau of Alcohol, Tobacco, and Firearms, executed a search warrant at a mobile home known to the DEA for marijuana sales. The front and sides of the trailer were protected by a six-foot-high chain link fence and two guard dogs: a German shepherd and a Doberman pinscher. There were iron bars on all of the windows and doors. On the back side of the trailer there was a TV monitoring camera, overhead lights, a mail slot, and a sign that read "Open all night Friday and Saturday." As the agents approached the front door, the Doberman pinscher charged the agents, and one of the DEA agents shot it. At the same time, an Illinois State Police officer ran to secure the back of the trailer. This officer saw a man—later identified as Cardell McPherson—standing outside the back of the trailer putting something small into his pocket. McPherson was apprehended and taken to the front of the trailer where he was searched. The search revealed two small manila envelopes of marijuana.

After knocking and announcing that they were police and that they had a warrant, the agents forced the door open with a battering ram and entered. DEA Agent Donald Mendrala was the first to enter the

trailer. He saw Mr. Jackson seated on a couch holding a .38 caliber revolver, leveled at the doorway. The gun turned out to be loaded. Agent Mendrala stepped back and ordered Mr. Jackson to drop the gun. After Agent Mendrala repeated this command, Mr. Jackson dropped the gun. Agent Mendrala and Agent Dean Duke then forced Mr. Jackson to the ground and handcuffed him. According to Mr. Jackson, the agents beat him and kicked him in the process. The agents then proceeded down a small hallway to the rear of the trailer. Agent Mendrala saw Mr. Chrismon and Mr. Poe at the end of the hallway and ordered them to a prone position. Agent Mendrala and Agent Dennis Wichern briefly searched Mr. Chrismon and Mr. Poe and found that neither man was armed, but that Mr. Chrismon had $500 in his front pocket. Mr. Chrismon and Mr. Poe were handcuffed, and all three suspects were moved outside.

The agents then thoroughly searched the trailer. In the living room, they found a triple-beam scale, two boxes of small (2½″ × 4½″) manila envelopes, a police scanner, and a piece of paper with several police frequencies scribbled on it. In the bedroom, they discovered a TV monitor which was turned on and showed a view of the rear sidewalk. Also in the bedroom were a .357 magnum caliber revolver, a .38 caliber revolver in a holster on top of a twenty-dollar bill, a 12–gauge shotgun, and two large plastic bags filled with approximately 120 small manila envelopes containing what later proved to be marijuana. In the kitchen area was a sign that read "Please help to keep clean. Put up your [things]. Clean the back room after your shift. (signed) Paul. P.S. Or else one week off." There were two vials of prescription drugs in a kitchen cabinet, both of which were dated 1/26/88, still contained pills, and bore the name Andrew Poe. The trailer was generally unkempt. There were no clothes stored in the closets, no towels or toiletries in the bathroom, very little food in the kitchen, and no beds or mattresses in the bedroom. The only pieces of furniture in the trailer were two sofas, a weight bench, and a big-screen color television set.

One of the windows in the back of the trailer had been converted to a one-way mirror, below which was a mail slot. The rest of the windows were covered with drapes or blankets.

Mr. Jackson, Mr. Poe, and Mr. Chrismon were taken to the Illinois Division of Criminal Investigation post. After they were given *Miranda* warnings, Mr. Poe and Mr. Jackson volunteered statements. According to DEA Agent Wichern, "Mr. Poe stated that he had been hired by Jackson to clean up the interior and exterior of the trailer, that no one lived at the trailer, the trailer was used exclusively for selling marijuana, that Jackson and Chrismon operated the trailer and that he owned the doberman pincer canine outside." Tr.III at 119.

Agent Wichern later questioned Mr. Jackson, who responded to the statement "you guys were running a 7–Eleven for marijuana at the trailer" by indicating that they were in fact open from 11:00 to 11:00. When asked how much they charged for the little envelopes of marijuana, Mr. Jackson said that they were sold for $10 each. Tr.II at 60.

## B. *District Court Proceedings*

On October 20, 1988, a federal grand jury indicted Mr. Chrismon, Mr. Poe, and Mr. Jackson each on three counts: possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846; and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). All three men pleaded not guilty and were scheduled for a joint trial. On January 26, 1990, the jury found Mr. Jackson guilty on all three counts, and found Mr. Chrismon and Mr. Poe guilty on counts two and three. On April 10, the district court entered final judgment against the defendants. Each separately filed timely notices of appeal.

## II

## ANALYSIS

We shall address the contentions of each appellant in turn, except for the overlapping appeal of the district court's refusal to instruct on a lesser included offense, which will be treated separately.

### A. *Baron Jackson (No. 90–1915)*

#### 1. *Bruton* challenge

Before trial, Mr. Jackson filed a motion in limine, seeking to prevent the government from introducing any of Mr. Poe's statements that incriminated Mr. Jackson. While the court denied the motion, it did so on the understanding that the prosecution had volunteered to redact Mr. Poe's statements to exclude any reference to Mr. Jackson. R.119 at 2. Mr. Jackson renewed his concern before trial, and the government reiterated that it would not introduce any reference by Mr. Poe to Mr. Jackson:

> [AUSA]: .... The report of the statement was he said he was hired to clean up the trailer inside and outside by Jackson. We're going to just put in that he was hired to clean up that trailer, period.
>
> .  .  .  .  .
>
> THE COURT: I am going to allow that. Of course, you are not going to mention Jackson's name.... You cannot elicit, and your witness who testifies about that must be instructed that he may not refer to who gave him the orders or directions to do the cleaning and not even by implication, but that he was instructed to clean up.

Tr.I at 4–5. Nevertheless, on the first day of trial, DEA Agent Mendrala testified that Mr. Poe said he was hired by Mr. Jackson. Defense counsel moved for a mistrial, but the court granted only a motion to strike. Mr. Poe later took the witness stand. He testified that Mr. Jackson hired him to clean the inside and outside of the trailer. Tr.III at 73–74. On cross-examination by the government, Mr. Poe reiterated that he had been hired by Mr. Jackson to clean up the trailer. Tr.III at 102. Mr. Jackson was

offered the opportunity to cross-examine Mr. Poe, but he declined. Tr.III at 110.

In *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), the Supreme Court held that, when two co-defendants, Mr. A and Mr. B, are tried together, if Mr. A does not testify, then the government cannot introduce into evidence at trial any extra-judicial statement by Mr. A that inculpates Mr. B. To do so would violate Mr. B's right to cross-examine as guaranteed by the Confrontation Clause of the Sixth Amendment. This problem arises when the government obtains the confession of a co-defendant who later exercises his Fifth Amendment right not to testify at the joint trial.

■ In this case, Agent Wichern testified to Mr. Poe's statement incriminating his co-defendant, Mr. Jackson. Standing alone, this situation would implicate the *Bruton* analytical model. However, Mr. Poe also testified and repeated Mr. Jackson's statement in his testimony. Mr. Poe was available for cross-examination by Mr. Jackson. Mr. Poe's in-court repetition of the out-of-court statement testified to by Agent Wichern undermined Mr. Jackson's *Bruton* challenge. "The Constitution as construed in *Bruton* ... is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross examination." *Nelson v. O'Neil*, 402 U.S. 622, 627, 91 S.Ct. 1723, 1726, 29 L.Ed.2d 222 (1971) (emphasis in original); *United States v. Mitchell*, 778 F.2d 1271, 1273 n. 1 (7th Cir.1985); W. LaFave & J. Israel, *Criminal Procedure* § 17.2, at 365 ("[O]rdinarily, any *Bruton* problem is avoided if the maker of the confession testifies at trial."). Thus, Mr. Poe's testimony obviated the problem caused by Agent Wichern's testimony. Thus, Mr. Jackson's Sixth Amendment rights were not violated.

**2. Voluntariness of Mr. Jackson's custodial statement**

Mr. Jackson gave a statement to DEA agents following his arrest. Prior to trial, Mr. Jackson moved to suppress this statement, and the district court held a hearing. Mr. Jackson argued that the statement was involuntary and should not be admissible because he (1) was intoxicated, (2) has a low IQ, (3) was beaten and kicked when he was arrested "despite offering no resistance," and (4) has no recollection of making a statement or receiving a *Miranda* warning. DEA Agent Mendrala testified at the hearing that Mr. Jackson was twice read his *Miranda* rights, and that the only "altercation" between the agents and Mr. Jackson took place when the agents "secured" Mr. Jackson and handcuffed him immediately after he dropped the gun. The district court denied Mr. Jackson's motion. It found that Mr. Jackson was indeed read his *Miranda* rights, that the only "altercation" occurred at the time of arrest— not before or during questioning—and that Mr. Jackson's drug use and low intelligence "are not sufficient to render his statements involuntary." Memorandum and Order of January 5, 1990 (R.113) at 5.

■ Mr. Jackson acknowledges that a defendant's intoxication or low intelligence by itself—without some showing of coercion by the government—will not negate voluntariness. Jackson's Br. at 11.[1] A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective. *See Andersen v. Thieret*, 903 F.2d 526, 530 n. 1 (7th Cir.1990) (defendant's "intoxication by itself could not support a finding of involuntariness and is relevant only to the extent it made him more susceptible to mentally coercive police tactics"). Mr. Jackson contends that the altercation upon arrest provides the necessary element of police coercion, when com-

---

1. *See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment"); *Bae v. Peters,* 950 F.2d 469, 475 (7th Cir.1991) ("Absent improper police coercion, a defendant's mental state does not render a confession involuntary under the due process clause."); *Smith v. Duckworth,* 910 F.2d 1492, 1497 (7th Cir.1990) ("the voluntariness of a confession does not hinge on a criminal defendant's mental state").

bined with his low intelligence and intoxication, to render his statement involuntary.

■ In review of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. *United States v. Haddon,* 927 F.2d 942, 945 (7th Cir.1991). "This standard is particularly deferential to the credibility determinations of a district judge who has conducted a suppression hearing wherein the conflicting testimony of witnesses was observed and afterward resolved." *Id.* Mr. Jackson presents no evidence or argument from which this court could conclude that the district court's factual findings were clearly erroneous. We accept, therefore, the court's determination that the only coercive acts by the arresting officers in this case were necessary or incidental to Mr. Jackson's arrest. Mr. Jackson made his statement more than an hour later, after he had been transported to the state police headquarters. We are not persuaded that the altercation upon arrest was intended to coerce, or had the effect of coercing Mr. Jackson into waiving his *Miranda* rights. Thus, the district court correctly denied Mr. Jackson's motion to suppress.[2]

### B. *Eric Chrismon (No. 90–1824)*

Mr. Chrismon challenges the admission of two statements made by his co-defendants: a statement made by Mr. Jackson that was admitted through the testimony of Agent Wichern, and a statement made by Mr. Poe that was repeated in the government's closing argument.

#### 1. Mr. Jackson's statement

Mr. Jackson did not testify at trial. However, DEA Agent Wichern testified at trial as to several statements made by Mr. Jackson while in custody:

Q  What did Mr. Jackson tell you at the time?

A  Well, I had initiated the conversation after reading him the rights that you guys were running a 7–Eleven for marijuana at the trailer.

Q  What did he say in response to that?

A  He said they were open from 11:00 to 11:00.

Q  On which days? Did he say?

A  He didn't say which days.

Q  Did he tell you what they were open for from 11:00 to 11:00?

A  I don't think so. But then I said how much do you guys sell those little packets of marijuana for? He said marijuana was sold for $10 bucks apiece in one of these envelopes.

Tr.II at 60. Also, in its closing argument, the Government repeated these statements:

Mr. Jackson also made a statement along with Mr. Poe, excuse me. Mr. Jackson said, in response to questions by the officers by, Agent Wichern, quote, or words to this effect I should say, the trailer is open between 11:00 a.m. and 11:00 p.m., during which time marijuana is sold in prepackaged envelopes for $10 cash each.

Tr. of January 26, 1990, at 15. Mr. Chrismon's trial counsel did not object to these statements. On appeal, however, Mr. Chrismon contends that, under *Bruton,* the admission of these statements violated his Sixth Amendment right to cross-examine Mr. Jackson and, thus, was plain error.

The government argues in response that, in *Richardson v. Marsh,* 481 U.S. 200, 107

---

**2.** Mr. Jackson also argues that the jury had insufficient evidence to find him guilty. Mr. Jackson emphasizes that there was no surveillance evidence or any other evidence offered to suggest that anyone had ever seen Mr. Jackson or any of his co-defendants ever actually sell marijuana. In response, the government reminds the court of the heavy burden Mr. Jackson bears with this challenge: Mr. Jackson must persuade this court that when all the evidence is examined in the light most favorable to the government, no reasonable jury could have found him guilty beyond a reasonable doubt.

*United States v. DeSoto,* 885 F.2d 354, 364 (7th Cir.1989). The government also reminds the court of the substantial evidence submitted to the jury in support of the charges against Mr. Jackson: he was found seated in what everyone agrees was a drug house; he leveled a gun at the officers after they broke open the door and entered; and he later admitted to Agent Wichern that the trailer was open from 11:00 to 11:00 and that they sold marijuana in small envelopes there for $10 each. A reasonable jury could find Mr. Jackson guilty of the offenses charged based upon the evidence presented.

S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court held that statements that do not directly inculpate but only provide "evidentiary linkage" can be admitted without offending the Sixth Amendment:

> In *Bruton*, the co-defendant's confession "expressly implicat[ed]" the defendant as his accomplice. Thus, at the time that confession was introduced there was not the slightest doubt that it would prove "powerfully incriminating." By contrast, in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant's own testimony).

*Richardson*, 481 U.S. at 208, 107 S.Ct. at 1707 (citations omitted) (footnote omitted) (quoting *Bruton*, 391 U.S. at 124 n. 1, 135, 88 S.Ct. at 1621 n. 1, 1627). The Court further held that "the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* 481 U.S. at 211, 107 S.Ct. at 1709 (footnote omitted). The government also notes that this court, in line with *Richardson*, has held that *Bruton* is not violated when the statement indicates that the confessing codefendant was assisted by accomplices but "his accomplices remain in the confession unnamed and not identified by race, age, size or any other means except by sex." *United States v. Holleman*, 575 F.2d 139, 142 (7th Cir.1978) (footnote omitted). *See also United States v. Madison*, 689 F.2d 1300, 1309 (7th Cir.1982) (defendant's statement that "somebody else" was involved in kidnapping found not to violate *Bruton*), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983). Because Mr. Jackson's statements do not identify Mr. Chrismon, but require additional evidence and inference to implicate Mr. Chrismon, the government argues that their use at trial did not violate *Bruton*.

In reply, Mr. Chrismon argues that the facts in this case make the otherwise vague references to "you guys" and "they" [3] direct references to the group of three defendants: Mr. Jackson, Mr. Chrismon, and Mr. Poe. Specifically, Mr. Chrismon notes that the three defendants were the only occupants of the trailer at the time of the search, that they were all apprehended, arrested, and transported together to the station, and that it was immediately following this group arrest that Agent Wichern interviewed Mr. Jackson and the phrases "you guys" and "they" were used. For support, Mr. Chrismon cites *United States v. Key*, 725 F.2d 1123, 1126 (7th Cir.1984), which held that " '[t]he introduction of a confession from which the names of co-defendants have been excised may violate the *Bruton* rule if in context the statement is clearly inculpatory of a co-defendant and vitally important to the Government's case.' " (quoting *English v. United States*, 620 F.2d 150, 152 (7th Cir.), *cert. denied*, 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980)).

However, as this court has noted before, the "evidentiary linkage" or "contextual implication" approach followed by *Key* and *English* was explicitly rejected by the Supreme Court in *Richardson*. *United States v. Strickland*, 935 F.2d 822, 826 (7th Cir.), *cert. denied*, ––– U.S. –––, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991); *United States v. Briscoe*, 896 F.2d 1476, 1503 (7th Cir.), *cert. denied*, ––– U.S. –––, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). Although the *Richardson* court "express[ed] no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun," 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5, *Briscoe* is illustrative of the impact of *Richardson* on a case where the statement includes only a reference to a collective and thus incriminates a member of the group only when linked with other evidence. In *Briscoe*, three women, who were suspected to be drug couriers and participants in a large conspiracy to smuggle heroin, were

---

**3.** Agent Wichern testified that Mr. Jackson said that "they" were open from 11:00 to 11:00 and sold marijuana in envelopes for $10 apiece.

Presumably Mr. Jackson used the pronoun "we" rather than "they," but Mr. Jackson's statement was not recorded.

arrested simultaneously after arriving at O'Hare Airport in Chicago. After it was discovered that the three women were indeed carrying heroin, one of the women, Ms. Bello, made the following statement to a customs officer, who repeated it at their joint trial:

> We were given tickets in Lagos [Nigeria] to go to New York. We did not carry this through U.S. Customs. Three other females carried it. We were only to bring this from New York to Chicago.

*Briscoe,* 896 F.2d at 1500. Because Ms. Bello, who made this statement, did not testify at trial, the other two women, Ms. Usman and Ms. Aderemi, objected to the admission of the statement on the ground that it violated their Sixth Amendment right to confrontation under *Bruton.* The district court disagreed and admitted the statement. On appeal, Ms. Usman argued that the statement violated *Bruton* because it "clearly identifie[d]" her as an accomplice. This court disagreed and held that the vague reference to "we" was too indirect to violate *Bruton* after *Richardson:*

> [W]e do not consider Bello's references to "we" and her statement that "[w]e were only to bring this from New York to Chicago," to directly incriminate Usman in the commission of a crime. The reference to "we" could just as easily

refer to only Bello and Aderemi as to Bello, Aderemi and Usman. Further, we disagree with the basic premise ... that the term "we" is just as incriminating to Usman as her own name would be.

*Briscoe,* 896 F.2d at 1502; *see also United States v. Strickland,* 935 F.2d 822, 826 (7th Cir.) ("the replacement of defendants' names with references such as 'another person,' combined with an instruction to consider the confession against only the declarant, satisfies *Bruton*"), *cert. denied,* — U.S. —, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991); *United States v. Myers,* 917 F.2d 1008, 1010 (7th Cir.1990) ("the prosecution may use euphemisms to avoid" a *Bruton* problem). Other circuits have generally approved the use of neutral pronouns on a case-by-case basis.[4]

■ Considered in isolation, Mr. Jackson's references to "we" or "they" do not directly implicate Mr. Chrismon. Even considered in context and in connection with other evidence, the connection to Mr. Chrismon is not at all inevitable. As was the case in *Briscoe,* the group of conspirators involved in the drug scheme included more than just the co-defendants. The evidence indicated that people worked at the trailer in shifts, including someone in a supervisory capacity whose name was Paul. Mr. Jackson's use of the term "we" or "they" could refer to the whole group of people

---

4. *See United States v. Washington,* 952 F.2d 1402, 1405 (D.C.Cir.1991) (references to "somebody else" and "an individual at the scene" did not violate *Bruton* ), *cert. denied,* — U.S. —, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992); *United States v. Donahue,* 948 F.2d 438, 444 (8th Cir. 1991) ("two or three references to 'everyone' and 'they'" did not violate *Bruton* ), *cert. denied,* — U.S. —, 112 S.Ct. 1600, 118 L.Ed.2d 314 (1992); *United States v. Williams,* 936 F.2d 698, 700–01 (2d Cir.1991) ("[W]e view the redacted confession in isolation from the other evidence introduced at trial. If the confession, when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant."); *United States v. Vogt,* 910 F.2d 1184, 1191–92 (4th Cir. 1990) (use of "client" did not violate *Bruton* because it "did not 'on its face' incriminate [defendant], even though its incriminating import was certainly inferable from other evi-

dence"), *cert. denied,* — U.S. —, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991); *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989) (references to "others," "other people," and "another person") did not violate *Bruton* ), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Vasquez,* 874 F.2d 1515, 1518 (11th Cir.1989) (reference to "individual" did not violate *Bruton* because it "does not compel a direct implication of the complaining defendant"), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990); *United States v. Espinoza–Seanez,* 862 F.2d 526, 534–35 (5th Cir. 1988) (reference to "the man who was to help him" did not violate *Bruton* ). *But see United States v. Payne,* 923 F.2d 595, 597 (8th Cir.) (co-defendant's statement that he was planning to help "someone" escape from prison violated *Bruton* as obvious reference to co-defendant), *cert. denied,* — U.S. —, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991); *United States v. Bennett,* 848 F.2d 1134, 1141–42 (11th Cir.1988) (repeated references to "they," combined with explanation

who worked at the trailer, or just the group that supervised the operation. In either case, "we" might exclude Mr. Chrismon if, as he argued, Mr. Chrismon did not work at the trailer and was only there "to get high." Similarly, it might exclude Mr. Poe if, as Mr. Poe argued, he was simply hired to clean up around the trailer. All of the defendants admit that the trailer was a "drug house," Chrismon's Br. at 13, and that the issue at trial was the extent of each co-defendant's involvement or responsibility for the operations of the trailer. In this context, we do not find Mr. Jackson's statements that they were open from 11:00 to 11:00 and that they sold marijuana for $10 per envelope to be any more probative of Mr. Chrismon's involvement than the sign "Open all night Friday and Saturday" that was posted outside the trailer. Mr. Chrismon was neither "specifically identified" nor "the only other participant in the charged crime." *Briscoe,* 896 F.2d at 1502.[5] For these reasons, we conclude that

the admission of Agent Wichern's testimony of Mr. Jackson's statement did not violate Mr. Chrismon's rights under *Bruton.*

In any case, because Mr. Chrismon's counsel failed to object to this statement at trial, we review only for plain error. Under that standard, we will find error only "in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). This court has defined plain error as an error "that resulted in 'an actual miscarriage of justice, which implies the conviction of one who but for the error would have been acquitted.'" *United States v. Baltrunas,* 957 F.2d 491, 495 (7th Cir.1992) (quoting *United States v. Gironda,* 758 F.2d 1201, 1216 (7th Cir.), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985)).[6] The error alleged by Mr. Chrismon does not approach this level; indeed, we conclude that there was no error at all in the admission of Agent Wichern's testimony.[7]

---

by government of who "they" are, found to violate *Bruton* ).

5. Unlike *Richardson,* the trial court did not immediately give a limiting instruction. However, Mr. Chrismon did not make this argument and therefore has waived it. Even if Mr. Chrismon had made this argument, however, it would fail. As in *United States v. Washington,* 952 F.2d 1402, 1407 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992), Mr. Chrismon's trial counsel did not request such an instruction, "perhaps because it might have created the very inference he sought to avoid." *See United States v. Myers,* 917 F.2d 1008, 1010 (7th Cir.1990) ("You can't instruct 'Do not draw inference X' without informing the jurors that X is one possible conclusion from the evidence."). Furthermore, the court instructed the jury at the end of trial that "a statement ... may not be considered by you as evidence against any defendant other than the one who made it," and "[e]vidence that on some former occasion a witness made a statement inconsistent with his testimony in this case may be considered by you only in determining the credibility of the witness and not to establish the truth of the matters contained in the prior statement." Government's suggested instruction No. 8; Jackson's suggested instruction No. 1. As did the *Washington* court, we think that these instructions were sufficient to bring the case within the scope of *Richardson,* despite counsel's failure to request immediately a limiting instruction. *Washington,* 952 F.2d at 1407.

6. The error alleged was constitutional—implicating the Sixth Amendment right to confronta-

tion—and thus could more easily constitute plain error. When alleged errors affecting the integrity of the criminal process are based in the Constitution, we have noticed them more freely on the assumption that, being constitutionally-based, they are more essential to the fair adjudication of criminal liability. *See United States v. Shue,* 766 F.2d 1122, 1132 (7th Cir.1985) ("Errors of constitutional dimension, such as the due process violation here, are more freely noticed than are less serious, non-constitutional errors."); *United States v. McKinney,* 954 F.2d 471, 476 n. 2 (7th Cir.1992) (jury verdict allegedly entered on invalid ground); *United States v. Cherry,* 938 F.2d 748, 753 n. 7 (7th Cir.1991) (underlying statute allegedly void for vagueness). Notably, none of these cases involved a constitutional rule of a prophylactic character.

Nevertheless, even given this obligation to examine with particular care constitutional issues involving the integrity of the criminal process, we are convinced that there was no possible miscarriage of justice in this case because there was no *Bruton* error.

7. Mr. Chrismon also suggests that, while an objection could not have cured the alleged *Bruton* violation, "there is no question that a mistrial would have been required if requested." Thus, Mr. Chrismon argues, his trial counsel's failure to make such a motion for mistrial constituted ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because we conclude that the introduction of Mr. Jackson's references to "we" or "they" did not violate Mr.

### 2. Use of impeachment testimony in closing argument

Mr. Poe testified at trial. When asked about the statement he gave to Agent Wichern, Mr. Poe stated that he told Agent Wichern only that he was hired by Mr. Jackson to clean the trailer. On cross-examination, Mr. Poe insisted that he told Agent Wichern only that he was hired by Mr. Jackson to clean the trailer:

> Q [Y]ou were hired by Mr. Jackson to clean up?
>
> A That's what I told them.
>
> Q You didn't tell them anything else?
>
> A I didn't tell them anything else.
>
> Q Do you know who operated the trailer?
>
> A No, sir, I do not.
>
> Q You didn't tell Mr. Wichern on that date after you were advised of your rights that Jackson and Chrismon operated that trailer?
>
> A No, I did not tell him that.
>
> Q You didn't tell him also that the trailer was used only for the sale of marijuana?
>
> A No, I did not tell him that.
>
> Q Now, you testified on direct that you did not tell him that that pincer that was shot out front belonged to you?
>
> A No, I didn't tell him nothing about that.

Tr.III at 102. To impeach Mr. Poe, the government called Agent Wichern, who testified that Mr. Poe told him several things:

> Q [P]lease tell the jury the full extent of the statement, if any, made to you by Defendant Poe?
>
> A Mr. Poe stated that he had been hired by Jackson to clean up the interior and exterior of the trailer, that no one lived at the trailer, the trailer was used exclusively for selling marijuana, that Jackson and Chrismon operated the trailer and that he owned the doberman pincer canine outside.

Chrismon's rights under *Bruton,* there is no merit to the suggestion that Mr. Chrismon's trial counsel was ineffective in not requesting a mistrial.

Tr.III at 119. Following Agent Wichern's testimony, the court instructed the jury that Agent Wichern's testimony was "admitted for impeachment purposes only and not as evidence of the truth of the prior statements that were made by Mr. Poe." Tr.III at 127. Despite the court's limitation, in closing argument the government referred to Agent Wichern's testimony as if it were evidence against Mr. Chrismon.

> Now what does Mr. Poe say? He says I was hired by Jackson to clean up the inside and outside of the trailer while it's open. Stated that no one lived in the trailer, the trailer was used exclusively for selling marijuana. He went on to state that Jackson and Chrismon operated the trailer.

Tr. of January 26, 1990, at 15. Agent Wichern's testimony about what Mr. Poe told him was inadmissible hearsay,[8] and thus could be admitted only for impeachment purposes rather than as substantive evidence. The government does not contest that it was improper for it to refer to facts not in evidence.

Mr. Chrismon invites our attention to *United States v. Guajardo–Melendez,* 401 F.2d 35 (7th Cir.1968), in which this court reversed the conviction of a man known as Guillermo Hernandez. At a joint trial, the government told the jury in rebuttal closing argument (after Hernandez' closing argument) that a co-defendant had identified Hernandez to undercover agents as a supplier of drugs. In fact, the co-defendant had made no such identification; no agent had so testified and the statement was simply untrue. To make matters worse, the co-defendant had not testified at trial and, thus, Hernandez had not had a chance to cross-examine him. Because there was very little evidence linking Hernandez as a supplier, and his defense was that he was an "innocent dupe" delivering a package for a friend, the court found that the statement was "particularly damaging." The court stated that the timing of the com-

8. The statement does not fall into the co-conspirator exception, Fed.R.Evid. 801(d)(2)(E), because it was not made in furtherance of the conspiracy.

ment—in rebuttal closing argument— "made any attempt at confrontation or argumentative reply impossible." Although Hernandez neither objected nor moved for a mistrial, this court found that the statement was plain error "affecting substantial rights" requiring reversal of Hernandez' conviction. *Guajardo–Melendez,* 401 F.2d at 41. Mr. Chrismon also points to *United States v. Fearns,* 501 F.2d 486 (7th Cir. 1974), in which the government referred— once in its closing argument and once in its rebuttal argument—to a witness' statement that was not admitted into evidence. This court found the government's conduct inexcusable and reversible as plain error. *Fearns* has been cited recently for the proposition that, "[w]hen argument departs from the facts in evidence, even without objection, the error may be so prejudicial as to be reversible." *United States v. Degeratto,* 876 F.2d 576, 587 (7th Cir.1989).

▬ This case is distinguishable from *Guajardo–Melendez* and *Fearns* for three reasons. First, according to Agent Wichern, Mr. Poe actually made the statement referred to by the government in its closing argument; the statement was not a fabrication by the government or simply untrue. Second, unlike the scant evidence against Hernandez, there was substantial evidence to support the conspiracy charge against Mr. Chrismon: in addition to his presence inside the trailer, near two guns and a stash of marijuana in small envelopes, agents found $500 in small bills in Mr. Chrismon's pocket. Third, the improper statement was a paraphrase of Agent Wichern's recollection of Mr. Poe's statement. Unlike Hernandez' co-defendant, Mr. Poe took the stand, was cross-examined, and denied making the statement. Thus, while the government improperly told the jury that Mr. Poe said that Jackson and Chrismon operated the trailer, the jury heard first-hand Mr. Poe's denial that he made that statement.

Because Mr. Chrismon's trial counsel did not object at trial to the statement, we review its admission only for plain error. As noted earlier, on plain error review, we shall not reverse the district court unless we find "an actual miscarriage of justice, which implies the conviction of one who but for the error would have been acquitted." *Baltrunas,* 957 F.2d at 495. As this court recently reiterated, " '[t]he test for determining if a prosecutor's closing argument requires reversal of the conviction is whether the remarks were so prejudicial that the defendant was deprived of a fair trial.' " *United States v. Schimmel,* 943 F.2d 802, 806–07 (7th Cir.1991) (quoting *Shepard v. Lane,* 818 F.2d 615, 621 (7th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987)), *cert. denied,* — U.S. —, 112 S.Ct. 1211, 117 L.Ed.2d 450 (1992). Also, we must "consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was 'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial....' " *Id.* Considering the government's improper statement in light of the other evidence relevant to Mr. Chrismon's case, we cannot say that it was so prejudicial that he was deprived of a fair trial, or that it led to the conviction of one who, but for the statement, would have been acquitted.

### C. *Andrew Poe (No. 90–1863)*

#### 1. Severance

The district court denied Mr. Poe's motion to sever his trial from Mr. Chrismon's and Mr. Jackson's. Mr. Poe argued, and renews the argument on appeal, that severance was proper because he needed Mr. Jackson to testify to the truth of his statement that Mr. Jackson hired him to clean up the trailer. Mr. Jackson did not testify at trial, and Mr. Poe could not compel Mr. Jackson to testify while he was a co-defendant. Mr. Poe suggests that severance would have changed this.

▬ As the district court noted in its Memorandum and Order denying Mr. Poe's motion for severance, this court has repeatedly emphasized the "strong interest in joint trials of those engaged in a common enterprise." *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). The interest is strong because

[j]oint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. The joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome.

*Id.* The presumption in favor of joint trials is especially strong when the defendants are charged with conspiracy. *United States v. Caliendo,* 910 F.2d 429, 437 (7th Cir.1990); *United States v. Briscoe,* 896 F.2d 1476, 1516 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). We shall not reverse a district court's denial of a motion for severance unless it was a clear abuse of discretion. To meet this burden, a defendant "must show 'actual prejudice'—that is, the defendant must show that she could not possibly have a fair trial without a severance." *Caliendo,* 910 F.2d at 437; *Briscoe,* 896 F.2d at 1516; *United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). When the reason for requesting severance is to obtain the testimony of a co-defendant, the district court "should consider three factors: '(1) whether the co-defendant's testimony would be exculpatory; (2) whether the co-defendant would in fact testify; and (3) whether the testimony would bear on defendant's case.'" *United States v. Gonzalez,* 933 F.2d 417, 425 (7th Cir.1991) (citing *United States v. Studley,* 892 F.2d 518, 525 (7th Cir.1989)).

As the government points out, the defendant who sought severance in *Gonzalez* presented an affidavit by his co-defendant. In the affidavit, the co-defendant swore that he would testify in a severed trial and set forth the substance of that testimony. 933 F.2d at 425. Mr. Poe did not present any such affidavit to the district court. Moreover, the record contains no other evidence to support Mr. Poe's allegation that Mr. Jackson would have testified in a sev-

ered trial, much less that Mr. Jackson would testify favorably to Mr. Poe's defense. On this basis, we conclude that it was properly within the district court's discretion to deny Mr. Poe's motion for severance.

## D. *Lesser included offense instruction*

■ All three defendants asked the district court to instruct the jury, with respect to the charge of possession with intent to distribute marijuana, of the lesser included offense of simple possession. The district court agreed with defense counsel that simple possession is indeed a lesser included offense of possession with intent to distribute, but the court refused to give the instruction because "the evidence adduced by the government is inconsistent with the lesser included offense." Tr.IV at 3. Specifically, the district court relied upon the quantity of marijuana (228 grams), the fact that the marijuana was packaged in over 100 small envelopes, and the overall setup of the trailer—the mail slot, the TV monitor, guns, triple-beam scale, radio scanner, guard dogs, etc.—to conclude that the evidence is "inconsistent with personal consumption." Tr.IV at 4.

The Supreme Court set the standard for giving a lesser included offense instruction in *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In *Schmuck,* the Court held that the elements of the lesser included offense must be a subset of the elements of the charged offense. In this case, court and counsel agree that simple possession meets this test. However, the *Schmuck* court also reiterated "an independent prerequisite for a lesser included offense instruction": "the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Schmuck,* 489 U.S. at 716 n. 8, 109 S.Ct. at 1450 n. 8; *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). As this court stated, the issue with respect to this second prerequisite is "whether the proof of the element necessary for the greater crime but not for the lesser crime is sufficiently in dispute so that a rational jury could find the defendant not guilty of the greater but

guilty of the lesser." *United States v. Schmuck*, 840 F.2d 384, 387 (7th Cir.1988) (en banc), *aff'd*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). However, a verdict on the lesser offense must be plausible as well as rational. *See United States v. Johnson*, 734 F.2d 503, 506 (10th Cir.1984) (upholding district court's refusal to give instruction on lesser included offense of simple possession where defendant's car contained 26 grams of 82 percent pure cocaine, a gun, scales, a sifter and a cocaine analysis kit); *United States v. Silla*, 555 F.2d 703, 707 (9th Cir.1977) ("We believe no other inference other than an intent to distribute is possible when over a ton of marijuana is found."); *United States v. Sinclair*, 444 F.2d 888, 890 (D.C.Cir.1971) ("[T]he judge is not required to put the case to the jury on a basis that essentially indulges and even encourages speculations as to bizarre reconstruction.").

The district court found this second prerequisite lacking. In essence, the court held that, in light of the undisputed evidence that the trailer was a heavily armed and guarded marijuana retail outlet staffed by employees in shifts, no rational jury could find that Mr. Chrismon, Mr. Poe, or Mr. Jackson were present in the trailer and in possession of the small packets of marijuana, but did not intend to distribute that marijuana. The district court was correct. In light of the circumstances, no rational jury could find that Mr. Chrismon, Mr. Poe, or Mr. Jackson were guilty of mere possession but not guilty of possession with intent to distribute. For this reason, the district court did not err in refusing to instruct the jury on the offense of simple possession.[9]

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

9. We note that, in any event, Mr. Chrismon and Mr. Poe were acquitted on the charge of possession with intent to distribute and, therefore, they can show no harm from the court's decision not to instruct the jury on the lesser included offense of simple possession.