**UNITED STATES of America, Plaintiff,**

v.

**William LI, Danny Hogan, and Chitoki Tokunaga, Defendants.**

**No. 93 CR 897.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 1, 1994.

412

See also 854 F.Supp. 520.

Rocco DeGrasse, Mark Vogel, Office of the U.S. Atty., Chicago, IL, for plaintiff.

Thomas M. Breen, Chicago, IL, for defendant Li.

Steve A. Greenberg, Chicago, IL, for defendant Hogan.

Marc W. Martin, Genson, Steinback, Gillespie & Martin, Chicago, IL, for defendant Tokunaga.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Defendants William Li, Danny Hogan, and Chitoki Tokunaga (a/k/a Kito) have been charged in a four-count superseding indictment. The indictment alleges the following facts. Hogan is the business agent of General Services Employees Union Local 73 ("Local 73"). Local 73 had an ERISA welfare

benefit plan known as the Local 73 Trust Fund (the "Trust Fund"). Pursuant to a service contract with Local 73, Health Administrators, Incorporated ("Health Administrators") provided dental services for union members through the Trust Fund. Li is a dentist and was the president of Health Administrators. Tokunaga was an employee of Health Administrators.[1] Li and Tokunaga paid, as a kickback to Hogan, a percentage of the premiums Health Administrators received from the Trust Fund. Defendants attempted to cover up the nature of the payments by making the payments to Morley Graphics and Associates ("Morley Graphics"), a firm owned by Hogan's wife, and by having the payments deposited into Morley Graphics' business account. It is also alleged that false invoices were issued to make it appear that the payments were for services provided by Morley Graphics. Count One charges a conspiracy in violation of 18 U.S.C. § 1954, which prohibits kickbacks to influence operations of ERISA benefit plans. Count Two charges Hogan with receiving a specific kickback in violation of § 1954. Count Three charges Li with a violation of § 1954 by paying the same kickback charged in Count Two. Count Four is against Hogan and Li and alleges the same kickback transaction as is charged in Counts Two and Three, but charges it as a violation of 18 U.S.C. § 1956(a)(1)(B)(i), which prohibits money laundering. Count Four also makes reference to the aiding and abetting statute, 18 U.S.C. § 2. Apparently, the government is contending in Count Four that Li aided and abetted Hogan's money laundering activity.

Defendants move to dismiss the indictment on the ground of improprieties by the grand jury that returned the original and superseding indictments in this case. The improprieties, however, apply only to an indictment returned by the grand jury in another case. There is no evidence that the indictment returned in the present case has been subjected to outside influence or that the secrecy of the proceedings in this case were ever violated.

One of the members of the grand jury that returned the indictments in this case was Robert Girardi. Girardi knew one of the defendants in *United States v. Coffey*, No. 92 CR 203 (N.D.Ill.), Richard Gelsomino. Girardi has recently been charged with soliciting bribes from Gelsomino and one of his codefendants, Richard Lantini, in return for not returning an indictment against these two. Gelsomino and Lantini reported the solicitation to federal authorities. Despite Girardi's solicitation, Gelsomino and Lantini were indicted by the grand jury. Defendants in the present case have provided Gelsomino's and Lantini's affidavits that they filed in moving to dismiss the indictment in 92 CR 203. Gelsomino states that Girardi told him that three other grand jurors were also willing to accept the bribes for not indicting him.

 Even in the *Coffey* case itself, the motion to dismiss the indictment was denied. *See United States v. Coffey*, 854 F.Supp. 520 (N.D.Ill.1994) (Plunkett, J.). While there is no dispute as to Girardi soliciting bribes in the *Coffey* case, there is nothing presented to show that Girardi solicited bribes from Li, Hogan, or Tokunaga. There is also no independent confirmation that there were actually three other grand jurors who were working along with Girardi. As stated by Judge Plunkett in the *Coffey* order, *in camera* submissions showed that an FBI investigation revealed no other grand jurors were involved. Also, Girardi himself has admitted no other grand jurors were involved. There is nothing to indicate that Girardi solicited bribes as to any other case other than the one in which he knew one of the potential defendants. Defendants in the present case do not represent that they received any solicitations and do not point to any evidence that secrecy was violated as to their own case. Defendants have not presented an adequate basis for permitting further inquiry of the grand jurors pursuant to Fed.R.Crim.P. 6(e). *See United States v. Peters*, 791 F.2d 1270, 1283–84 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). An

1. In various motions, the government also contends that Li and Tokunaga conducted business as Dental Care Plus Management.

indictment will not be dismissed based on grand jury improprieties unless the defendants were prejudiced. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). Defendants have not shown how they could have been prejudiced by one grand juror soliciting bribes as to an unrelated indictment. Even if bribes had been solicited as to the present case, there would not necessarily have been any prejudice to defendants. *Compare Coffey, supra.* This indictment will not be dismissed based on grand jury improprieties and further discovery as to the grand jurors will not be permitted.

Defendants Li and Hogan move to dismiss Count Four of the indictment. Defendants contend that there is no allegation of the laundering of illegal proceeds, only an allegation that the kickback payment itself was disguised. The statute provides: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" violates the law. 18 U.S.C. § 1956(a)(1)(B)(i). The government does not dispute that the money laundering must involve the disguising of proceeds, not merely the disguising of the illegal payment itself. The government, however, argues that the money laundering offense is the deposit of the check into the Morley Graphics bank account, not making the check itself payable to Morley Graphics.

▮ The elements of a § 1956(a)(1)(B)(i) money laundering offense are: (1) knowingly conducting a financial transaction; (2) known to involve and actually involving proceeds of specified unlawful activity; and (3) knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds. *Hollenback v. United States,* 987 F.2d 1272, 1274 (7th Cir.1993). The government does not dispute that the financial transaction must involve proceeds and that the financial transaction must occur after the defendant has obtained possession of the proceeds. *See United States v. Johnson,* 971 F.2d 562, 569 (10th Cir.1992).

▮ Defendants contend that the check did not become proceeds until it was deposited into the business account for Morley Graphics. A check, however, is a negotiable instrument with value of its own. A check does not need to be deposited in order to have value. It can be endorsed to a third party or cashed without being deposited. A check is no less proceeds than are stolen goods that have not yet been converted into cash. *See, e.g., United States v. Griffith,* 17 F.3d 865, 877–79 (6th Cir.1994). The *Johnson* case relied upon by defendants is distinguishable. There, the proceeds were paid by wire transfer and the wire transfer itself was also alleged to be the financial transaction. *Cf. Griffith, supra,* (limiting *Johnson* to its facts). Here, receipt of the check is distinct from the financial transaction of depositing the check into a bank account. When deposited into a Morley Graphics account, the deposit itself, not just the payee on the check, was also designed to disguise the nature, source, ownership, or control of the proceeds. The indictment adequately alleges a financial transaction involving unlawful proceeds. Count Four will not be dismissed.

The government moves to admit certain other bad acts evidence as against Li and Tokunaga. The government seeks to present evidence purportedly showing that Li and Tokunaga paid bribes to an official of a trust fund of the National Production Workers Union ("NPWU") in order to obtain a contract to provide dental services through a union health benefits plan. The government contends that such evidence would be used to show intent, knowledge, or common scheme or plan. *See* Fed.R.Evid. 404(b).

The only evidence that the government has to show the other bad acts are purported admissions of Li and Tokunaga. The government represents that it has the following evidence. Frank Stroud, a vice-president of NPWU, will testify that he met with Li and Tokunaga in February 1993. Stroud told Li and Tokunaga that he suspected illegal com-

missions were being paid to union members affiliated with benefit trust funds. Stroud inquired whether Li and Tokunaga were then paying commissions to Joseph Senese and Robert Mondo, NPWU members affiliated with an NPWU benefit fund.[2] Li responded by cursing and stating he wished he had never been involved with unions. Tokunaga denied making payments to Senese, but admitted giving something to Mondo. Tokunaga would not respond to specifics and the two defendants then cut off the conversation. The government seeks to present these admissions to prove the other bad acts; there is no contention that the government has any other evidence to show that the other bad acts were committed. The government also seeks to present letters Li and Tokunaga wrote to NPWU complaining about Stroud and denying his accusations. The government contends that the letters are part of a coverup and show a common scheme or plan in that Li sent a similar letter of denial to Local 73 after Local 73 officials made accusations as to Li.

The test for admitting other act evidence is whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Shields,* 999 F.2d 1090, 1099 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 877, 127 L.Ed.2d 74 (1994) (quoting *United States v. Zapata,* 871 F.2d 616, 620 (7th Cir.1989)). Defendants argue[3] that intent and knowledge are not necessarily an issue in this case; the acts are too far removed in time from the charges in this case; there is insufficient evidence to support that

the acts occurred; and the jury might use the evidence to show propensity. Also, defendants contend that Stroud has made numerous accusations as part of a vendetta against NPWU officials and that cross examining him would require going into a number of side issues that would result in jury confusion.

■ It is unnecessary to decide whether evidence of bribing officials of other benefit plans should be admissible against Li and Tokunaga under Rule 404(b) since the government does not point to sufficient evidence that such bribes occurred. It is true, as the government contends, that this court need not find that a preponderance of the evidence supports that the other acts were committed. It need only be found that there is sufficient evidence for a jury to find by a preponderance of the evidence that the act occurred. *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).

■ There is no evidence Li participated in other bad acts. Li responded to Stroud by complaining about working with unions. This is not an admission that Li paid bribes. Even assuming Tokunaga's statement could be considered as against Li, the proffer does not indicate that Tokunaga stated Li made any payments to Mondo. There is no basis for presenting any other act evidence against Li.

■ As for Tokunaga, it is only proffered that Tokunaga admitted giving "something" to Mondo. It will be assumed that this means something of value. Although unclear from the proffer, Tokunaga's statement apparently was in direct response to a question about paying commissions, so it will be assumed that the something was in the form of a commission. However, there is nothing to indicate what was to be provided in return for the payment of the commission. The proffer contains insufficient evidence to determine what similarity there is between the kickback scheme charged in the indictment and any kickback scheme Tokunaga may

---

**2.** The government provides no details as to what the specific arrangement might have been. It may be that Stroud was never specific in his questioning.

**3.** It is assumed that Li adopts the arguments contained in Tokunaga's brief.

have been involved in with NPWU officials. Therefore, the government has not satisfied the third element of showing there is sufficient evidence to support a jury finding of similarity.

The government's motion to admit Rule 404(b) evidence will be denied.

The government also intends to present evidence of statements Li and Tokunaga made to union officials admitting that they had made payments to Hogan. The government contends that these statements are admissible against all defendants because either made in furtherance of the conspiracy, *see* Fed.R.Evid. 801(d)(2)(E), or because an admission against interest, *see* Fed.R.Evid. 804(b)(3). Defendants contend that each statement is only admissible against the particular defendant who made the statement and, if admitted as against that defendant only, requires that each defendant be tried separately. To the extent any statement is admissible against a particular defendant only, the government contends that redaction of references to the other defendants is a sufficient means to prevent prejudice to the other defendants.

■ According to the allegations of the indictment and the government's *Santiago* proffer, the kickback conspiracy occurred in 1987 and 1988. In its *Santiago* proffer, the government represents that Richard Wesley was a trustee of and plan administrator for the Trust Fund. On behalf of the Trust Fund, Wesley signed the service agreement with Health Administrators. It is also alleged in the *Santiago* proffer that, during fall 1992 discussions of renewal of the service contract, Tokunaga stated to Wesley that the rates quoted factored in commissions being paid to Hogan. Although made in 1992, the government labeled this as a statement in furtherance of the conspiracy. In response to defendants' motions, the government clarified that, although it only has evidence to support payments made in 1987 and 1988, it contends that the conspiracy, or a joint venture, continued through 1992. Tokunaga's 1992 statement to Wesley is evidence that defendants conspired to continue the kickback scheme into 1992. Therefore, it qualifies as a statement made in furtherance of

the conspiracy and is admissible against all defendants pursuant to Fed.R.Evid. 801(d)(2)(E).

■ Alternatively, the government contends that Tokunaga's statement is a statement against penal interest that is admissible given Tokunaga's unavailability to testify. Evidence is admissible pursuant to Rule 804(b)(3) if it is found "that, (1) the declarant's statement was against the penal interest of the declarant, (2) corroborating circumstances exist indicating the trustworthiness of the statement, and (3) the declarant was unavailable." *United States v. Gio*, 7 F.3d 1279, 1288 (7th Cir.1993) (quoting (*United States v. Garcia*, 897 F.2d 1413, 1420 (7th Cir.1990)). The corroborating circumstances must "clearly indicate" the trustworthiness of the statements. *Garcia*, 897 F.2d at 1420. An inculpatory statement of a codefendant is presumed unreliable, but the presumption is rebuttable. *United States v. York*, 933 F.2d 1343, 1362 (7th Cir.), *cert. denied*, ─── U.S. ───, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991). "The fear that inculpatory statements are unreliable stems largely from the presumption that such statements are self-serving, offered only to shift the blame from the declarant to another. But when, as here, the inculpatory portion of a statement is also against the declarant's interest, or when it is neutral because the declarant has not attempted to diminish his own role, there is little reason to suspect that portion of an otherwise reliable statement is untrustworthy." *Id.* at 1363.

■ This exception only applies if the particular defendant chooses not to testify. If Tokunaga testifies at the trial, then the prior statement would not be admissible against the other defendants as a statement against penal interest (but would still be admissible against the other defendants as a statement in furtherance of the conspiracy). For purposes of today's ruling, it will be assumed that Tokunaga is not intending to testify.

■ Tokunaga's statement that he paid "commissions" to Hogan must be found to be a statement against penal interest. There is nothing to indicate that the payments could

be perceived as legal "commissions," not illegal kickbacks. Defendant do not contend that this requirement is not satisfied.

▮▮▮ The remaining question is whether the corroborating circumstances clearly indicate trustworthiness. The burden is on the government to present sufficient evidence of corroborating circumstances. The government argues: "Finally, corroborating evidence will demonstrate the trustworthiness of Tokunaga's statement. Witness testimony (including Frank Stroud's testimony about a conversation he had with Tokunaga regarding a different union local [4]), co-conspirator statements, documentary evidence, handwriting analysis and tax records corroborate Tokunaga's statement to Wesley." While such corroborating *evidence* is given some weight, *see, e.g., Gio,* 7 F.3d at 1288; *United States v. Harty,* 930 F.2d 1257, 1264 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 262, 116 L.Ed.2d 215 (1991), the primary focus is on the corroborating *circumstances* of the giving of the statement itself. *See Harty,* 930 F.2d at 1264–65. *See, e.g., Gio,* 7 F.3d at 1288; *York,* 933 F.2d at 1363.

The government's argument does not focus on the circumstances of the giving of the statement. Those circumstances are that the statement was made during a discussion with the plan administrator about renewal of the service contract. Tokunaga did not attempt to downplay his own role by mentioning Hogan. That indicia of untrustworthiness is not present. While Tokunaga may have been seeking to curry favor in order to continue to have a service contract with the benefit fund, there is nothing to indicate that such a motive would have also been motivation to exaggerate the role of Hogan or Li. Even if the statement to Wesley is not admissible as a statement in furtherance of the conspiracy, it would be admissible against the other defendants as a statement against interest.

The government also intends to present evidence that, in 1992, Li made admissions to Local 73's then-president regarding his involvement in the kickback scheme and, in 1993, Li made admissions to a business associate regarding his involvement in the kickback scheme. The government contends that this evidence is also admissible against Tokunaga and Hogan because it involves statements against interest admissible under Rule 804(b)(3).

According to the government's proffer, an FBI interview, and grand jury testimony, Harry Kurshenbaum can testify that he and Li had the following conversation in December 1992. At the time, Kurshenbaum was the president of Local 73, but he has since been suspended from that position. The circumstances of the conversation were that Kurshenbaum had called Li into his office after hearing from Wesley reports that Li had admitted to paying kickbacks under threats from Hogan. Kurshenbaum was conducting an investigation of the kickbacks. Kurshenbaum can testify that Li admitted that he paid cash kickbacks to Hogan because Hogan represented that he could influence the awarding of contracts. Li also told Kurshenbaum that Li did not report to Kurshenbaum the initial request for a kickback because Hogan had threatened violence. Specifically, Li stated Hogan threatened to put an axe in Li's head. When Kurshenbaum questioned Li about whether he understood that unions were regulated by the government and that this was a serious matter, Li responded, "I know. Kito [Tokunaga] paid the monies." During the conversation, Li also asked Kurshenbaum whether this meant Li would lose the service contract.

The government also intends to present evidence of statements Li allegedly made to a business associate, Clayton Hayes. The government makes the following proffer.

In December 1993, Clayton Hayes met with Li in Las Vegas. During this meeting, Li advised that he had been indicted for making illegal payments to a union business agent ("BA"). Li explained that he had been approached by a BA whose wife owned a graphic design company. The BA offered to help Li obtain his union's dental business and also recommended his wife's graphic design business to Li. Li said that he subsequently met with the BA and the BA's wife regarding graphic design work. Li admitted that he

---

**4.** As previously held, this evidence is not admissible.

had paid the BA's wife in order to obtain the dental business from the BA's union, although she had performed no work. Li also said that Tokunaga was indicted because he had made a payment to the BA from his personal bank account when Li was on vacation. Li had later reimbursed Tokunaga. Hayes advised Li that Li was in an untenable position.

As with Tokunaga's statement, it will be assumed that Li is unavailable because he will not be testifying at the trial. If he does choose to testify, his statements would not be admissible as statements against penal interest. There is also no dispute that Li's statements were against his penal interest. The only question is whether there are corroborating circumstances of trustworthiness.

■ As with Tokunaga's statement, the government relies only on other evidence consistent with Li's statements. The government again ignores the issue of whether the circumstances of the giving of the statements supports trustworthiness.[5] The statements were given to the Union president who was investigating possible kickbacks to Hogan or others. It would have been obvious that admissions of making kickbacks would be against Li's penal interest. Li obviously knew that any admission as to paying kickbacks would be against his penal interest. In initially admitting that he made payments to Hogan in order to influence the award of contracts, Li did not seek to shift blame between himself and Hogan. Assuming Li does not take the stand, those statements are admissible against all defendants as statements against penal interest.

■ After making the initial admissions, however, Li began to seek to shift blame to the other defendants. He claimed that he only began making payments because Hogan threatened him, thereby seeking to portray Hogan as the primary instigator of the scheme. Li also claimed that Tokunaga was the one who made the payments. That statement seeks to shift blame to Tokunaga and is inconsistent with the government's documentary evidence that Tokunaga made only one payment. The evidence about threats and the statement "I know. Kito paid the monies." is not admissible against the other defendants because lacking sufficient indicia of trustworthiness.

■ The statement "I know. Kito paid the monies." is still admissible against Li as an admission by a party. Fed.R.Evid. 801(d)(2)(A). However, since not admissible against Tokunaga, mention of Kito must be omitted from any testimony Kurshenbaum gives. If the government intends to present evidence of this statement, Kurshenbaum should be instructed to only testify that Li said "I know. *Someone else* paid the monies." Entirely deleting the second sentence was considered, but it is necessary for completeness.

■ The government does not intend to present evidence that Li stated Hogan threatened him with an axe. Hogan opposes admission of that statement, while Li has indicated he wants it in. Li may be raising a coercion defense, though he has not formally made such a representation. Contrary to Li's contention, the statement as to the axe is not necessary for completeness. It will not come in as part of the government's case. Also, the government is not to elicit any testimony from Kurshenbaum as to any other statements of Li that threats were made by Hogan. Threats are not necessary to prove the government's case.[6]

---

5. The government's entire argument as to trustworthiness is: "The other evidence in this case including witness testimony, coconspirator hearsay, the kickback checks themselves made payable to the account of Morley Graphics for concealment purposes, and tax records strongly corroborate Li's statements (which come at the end of the scheme) indicating their trustworthiness."

6. Li cannot present the statements he made to Kurshenbaum as part of his own case; it is only nonhearsay when presented by the government, an opponent. However, if Li decides to raise a coercion or other similar defense, Li would be permitted to testify as to any threats. If, at any point, it appears that Li intends to raise a coercion-type defense and present such evidence, it will be reconsidered whether Hogan should be tried separately.

Still to be considered are the statements to Hayes.[7] These statements were made after Li had been indicted, when he clearly knew the statements would be against penal interest. They were made to a friend, not an investigator. In the conversation, Li did not attempt to shift blame to the other defendants. He states that Tokunaga made one payment, but also admits that he reimbursed Tokunaga for the payment. He also does not attempt to blame Hogan for forcing him into the relationship through threats of violence. Assuming Li does not take the stand, the statements to Hayes will be admissible against Tokunaga and Hogan as statements against interest.

With the exception of the statement about Kito paying money, the statements are admissible against all the defendants. The statement about Kito, once redacted to omit Tokunaga's name and with an appropriate limiting instruction being given, is not a basis for granting severance for either Tokunaga or Hogan. *See United States v. Strickland*, 935 F.2d 822, 826 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991); *United States v. Chrismon*, 965 F.2d 1465 (7th Cir.1992).

IT IS THEREFORE ORDERED that:

(1) Defendants' [1, 2, 3] motion to dismiss and request for discovery and hearing [57] is denied.

(2) Defendants' [1, 2] motion to dismiss count four for failure to state an offense [47] is denied.

(3) Defendant Li's [1] motion to preclude hearsay [60] is denied.

(4) Defendant Tokunaga's [3] motion to preclude admission of a portion of defendant Li's alleged statement implicating Tokunaga is granted in part and denied in part and his alternative motion for severance is denied.

(5) Defendant Hogan's [2] motion for severance is denied.

(6) Government's motion in limine to admit evidence pursuant to Rule 404(b) is denied.

---

7. Tokunaga and Hogan do not make any specific argument that the statements to Hayes lack trustworthiness. Nevertheless, that issue is being considered.